IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ANDREW TULLOS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. G-06-109 |
| § | |
| ROWAN DRILLING COMPANY, INC., § | |
| et al., § | |
| § | |
| Defendants. § | |

## ORDER GRANTING DEFENDANT AMBAR DRILLING FUILDS LP'S MOTION FOR SUMMARY JUDGMENT

This case arises out of injuries allegedly sustained by Plaintiff Andrew Tullos ("Plaintiff") while attempting to board the M/V LORI D ("LORI D") at Defendant Ambar Drilling Fluids LP's ("Ambar") dock facility in Cameron, Louisiana. Now before the Court is Ambar's Motion for Summary Judgment. For the following reasons, Ambar's Motion is **GRANTED**, and Plaintiff's claims against Ambar are **DISMISSED WITH PREJUDICE**.

**I. Background**

Plaintiff brought suit against Ambar, Rowan Drilling Company, Inc., Rowan Companies, Inc. (collectively "Rowan"), Newfield Exploration Company ("Newfield"), Marine Transportation Services, Inc. ("MTS"), and Aramark Food Service Corporation ("Aramark") (collectively "Defendants") for personal injuries sustained on or about February 24, 2004 while attempting to board the LORI D, a crew boat. Plaintiff alleges that as a result of Defendants' negligence and the unseaworthiness of the LORI D, that he could not safely board the vessel.

1

Before proceeding further, the Court must take a brief moment to explain the relationships among the Parties: At the time of the incident giving rise to this lawsuit, Newfield had contracted with MTS and Rowan in connection with drilling operations in the Gulf of Mexico off the coast of Louisiana. Rowan, the owner and operator of the ROWAN PARIS, a jack up drilling rig, had contracted with Aramark to provide catering services for the rig. Plaintiff, who had been employed as a chef manager by Aramark since 2000, was assigned to the ROWAN PARIS. The LORI D, owned and operated by MTS, was working for Newfield, which had an agreement with Ambar to use Ambar's dock in Cameron, Louisiana.

On February 23, 2004, the LORI arrived at the Ambar dock around 4:30 p.m. It moored at Ambar's heavy water dock, Dock #1. Ambar's facility contains five docks along its waterfront. Dock #3 is known as the crewboat dock because Ambar prefers that vessels utilize that dock for crew changes. The captain of the LORI D, Phillip Nelson ("Captain Nelson"), decided to initially moor the vessel at Dock #1 so that it would be out of the way of other vessels that needed to use Dock #3. The LORI D remained at Dock #1 until it left after the alleged accident. Captain Nelson's deposition testimony indicates that he intended to reposition the LORI to Dock #3 prior to the crew change because that dock had a fixed passenger ramp. Additionally, several witnesses testified that the standard procedure at the Ambar dock was to move a vessel to Dock #3 only when it was time to load or unload passengers.

Plaintiff arrived at Ambar's dock around 4:00 a.m. on February 24, 2004, for the crew change. He had been told that the crew change would take place at the Ambar dock, and that he would be boarding the LORI D. After he arrived, Plaintiff attempted to board the LORI D by placing his foot onto one of the tires on the side of the vessel and then pulling himself up over the railing. The LORI

D was still at Dock #1 at that time. Plaintiff alleges that he was injured when he fell into the water after his foot slipped off of the tire and he lost his footing.

Ambar now moves for summary judgment, arguing that it owed no duty to provide Plaintiff a means of ingress or egress to the vessel, and that it satisfied its responsibility to provide a reasonably safe dock. In response, Plaintiff argues that there are genuine issues of material fact as to whether Ambar breached its duty to provide a reasonably safe dock, and that Ambar's Motion should be denied. The other defendants in this action—MTS, Rowan, Aramark, and Newfield—argue that Ambar's Motion should be denied on the same ground. After thoughtfully considering the Motion, the Responses thereto, the relevant evidence, and the applicable law, the Court concludes that Ambar's Motion for Summary judgment is hereby **GRANTED**.

## II. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1956). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The court must view all evidence in the light most favorable to the non-movant. *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003).

If the evidence would permit a reasonable fact finder to find in favor of the non-moving party,

summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S. Ct. 2512. Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See id.* at 255, 106 S. Ct. at 2513.

**III. Analysis**

In its Motion, Ambar argues that Plaintiff's claim for negligence must fail since it fulfilled its sole duty to provide a dock which was reasonably safe. Additionally, Ambar argues that it had no duty to provide Plaintiff with a means of ingress or egress from the vessel. In Response, Plaintiff essentially concedes that Ambar had no duty to provide Plaintiff with safe egress or ingress to vessel, but argues that there are genuine questions of material fact as to whether Ambar provided a reasonably safe dock. Specifically, Plaintiff alleges that: (1) Ambar did not have a check-in station for persons entering its premises to inform them of the proper boarding location; (2) it did not have any employee available to instruct Plaintiff that it was in fact unsafe to board the vessel at the dock where it was moored; and (3) Ambar failed to provide adequate signs about the proper boarding location and procedure for its invitees. Thus, the primary contention between the Parties is whether Ambar's dock was reasonably safe.

The Fifth Circuit has held that "absent a maritime status between the parties, a dock owner's duty to crew members of a vessel using the dock is defined by the application of state law, not maritime law." *Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 332 (5th Cir. 1993) (holding that Louisiana premises liability law governed a crew member's claim against a dock which

was not owned by his employer). *See Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1218 (5th Cir. 1993). "[T]raditionally, '[t]he gangplank has served as a rough dividing line between the state and maritime regimes,'" and "[p]iers and docks are deemed extensions of land." *Florida Fuels*, 6 F.3d at 332 (quoting *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 207, 92 S. Ct. 418, 422, 30 L. Ed. 2d 383 (1971)). Both the Parties and this Court agree that Louisiana law applies in this case.

"[A] plaintiff may recover damages when he or she sustains injury as the proximate result of the conditions of the dock or wharf, and when such conditions are the result of the negligence of the owner." 79 AM. JUR. 2d Wharves § 35 (2006). Under Louisiana law, a dock owner, such as Ambar, owes an invitee, such as Plaintiff, the duty to provide a reasonably safe dock. *See Florida Fuels*, 6 F.3d at 332–33; *Sons v. New Amsterdam Casualty Company*, 186 So. 2d 375, 376 (La. Ct. App. 4th Cir. 1966). *See also* La. Civ. Code Ann. art. 2317 (2006) ("We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."); *Champagne v. Nautical Offshore Corporation*, 2002 WL 31387134, *2 (E.D. La. Oct. 22, 2002); *Young v. Cenac Towing Company, Inc.*, 1997 WL 685267, *1 (E.D. La. 1997).

Generally speaking, the circumstances giving rise to a dock owner's liability involve an actual physical defect of the dock itself, such as rotten or missing floor planks, manifestly inadequate lighting on a dock routinely used during the night, or slippery floor surfaces. *See* Annotation, *Liability of Wharf Owner or Operator for Personal Injuries to Invitees or Licensees Resulting From Condition of Premises or Operation of Equipment*, 34 A.L.R. 4th 572 (1984) (finding that particular dock owners or operators have been held liable for injuries resulting from rotten or missing floor planks, slippery floor surfaces, obstructions or protrusions from docks, inadequate lighting, falling

or swinging objects, and runaway express trucks or pushcarts). *See also Guillory v. Cameron Offshore Servs., Inc.*, 422 So. 2d 592 (La. App. 1982) (finding that oil left on bulkhead cap could give rise to liability); *Sons*, 186 So. 2d at 376 (suggesting that inadequate lighting may be held as reason for dock not being reasonably safe). Here, Plaintiff has not alleged any physical defect of the dock itself, but rather, that Ambar failed to warn Plaintiff of the dangers inherent in boarding a vessel in the manner he attempted. Plaintiff argues that Ambar should have provided signs about proper boarding locations and procedures for its invitees, provided a check-in station at the dock, or that it should have had employees on duty to assist invitees and or monitor the premises. The other Defendants essentially argue the same. The suggestion that a passive dock owner must supply signs or a check-in station is not supported by the law. The Court was able to locate only one unpublished opinion regarding a dock owner's duty to post the type of signs suggested by Plaintiff, *Young v. Cenac Towing Co.*, 1997 WL 685267 (E.D. La. Nov. 3, 1997). In *Young*, the Eastern District of Louisiana held that the lack of such signs did not render the dock in question unreasonably safe. *Id.* at *2.

Ambar has not breached a duty by failing to warn Plaintiff of the dangers inherent in boarding a vessel in the manner he attempted. This Court has been around docks and docking areas for well over 40 years, and it has never seen the signs or other security measures suggested by Plaintiff and the other Defendants. That is, in fact, why one is so careful on a dock. The "duty to warn" suggested by Plaintiff and the other Parties is not a duty that normally attaches to dock owners, and those Parties have failed to show why this Court should impose such a duty on Ambar. While both Plaintiff and the other Defendants make a vigorous argument, they make no reference to case law to support their position. Likewise, the Court has been unable to locate any authority.

Plaintiff and the other Defendants want this Court to impose a duty that would essentially require a dock owner to make sure that every passenger gets to the gangplank safely, going above and beyond the requirement to provide a reasonably safe dock. They insist that a dock owner should have the responsibility to assist with the safe ingress and egress of vessel passengers. This position is undermined by the fact that a dock owner has no duty to provide a means of access between a vessel and the dock. If they have no such duty to provide access, it logically follows that they have no duty to see that an invitee reaches that access point safely. The law does not impose such affirmative action on the part of a dock owner.

### IV. Conclusions

Plaintiff has failed to raise any genuine issue of material fact as to the safety of Ambar's dock. Ambar has shown that it did not breach its duty to provide Plaintiff with a reasonably safe dock. For those reasons and the reasons stated above, Ambar's Motion for Summary Judgment is hereby **GRANTED**. All of Plaintiff's claims against Ambar Drilling Fluids, LP are hereby **DISMISSED WITH PREJUDICE**. A Final Judgment will be issued in due course. Each Party is to bear its own taxable costs, expenses, and attorneys' fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 25th day of August, 2006, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge